The opinion of the Court was delivered by
Daegan, Ch.
There are three modes of disposition, by which a separate estate may be created in favor of a married woman. First; where technical words are employed; as in instances where the estate is given for “ the sole and separate use of the wife.” Second ; where the estate is not given after this form, but the marital rights are excluded by express words. For example, where an estate is given to the wife, but not to be subject to the power, control or liabilities of the husband ;-or, where the marital rights are restricted by words of a similar import. Third; where the marital rights are excluded by implication; as in instances, where, by the instrument creating the estate, the wife has the power to do acts, to exercise a control, and to make dispositions of the property, which are inconsistent with the marital rights. It is thought, that the most, if not all the cases of this description, may be brought within one or the other of these classifications.
*49 The testator, David Cave, by his will, directed all. his estate, real and personal, to be sold by his executors. One-sixth part thereof, he gave to his son Matthiew Cave, absolutely, and for ever. He then proceeds to the declare as follows: “ The other remaining five parts of my property real and personal, I give and bequeath to my son, Matthiew Cave, intrust nevertheless, for the use, benefit and interest of my daughters, Dorcas Kirkland, Elizabeth Nix, Martha Cave, Nancy Cave and Mary Cave, in equal proportions, share and share alike, and not subject to the debts, contracts, or sale of their present, or future hus-bandsThis constituted a separate estate in the testator’s daughters under the second classification of such cases above enumerated.
In January, 1835, the testator’s land, and some of the personal estate was sold for the purpose of partition. And a division was made among the parties entitled, of the remaining chattels, including the negroes.
The presiding Chancellor in his report of the case states, that “on the 11th February, 1836, Martha Cave, (then sui juris,) gave Matthiew Cave a receipt for $768 69, in full of her share; with a schedule prefixed, showing that she received a slave named Peter, at $550, cash $50, and- other articles mostly consumable in the use. In April, 1835, Martha Cave sold Peter to Jesse Nix for $600; and in April, 1835, purchased from A. J. Nix for $650, two slaves. Chloe and her child Richard ; and took a bill of sale in her own name. Chloe has since had four other children, Cuffee, Bob, Adam and Nancy. On the 6th December, 1838, the defendant Robert Bradly intermarried with Martha Cave, she being then about thirty-two years of age. At the time of the marriage, according to the responsive statements of the answer, (and there was no opposing evidence,) she was possessed of the two slaves, Chloe and Richard, a horse, about eight head of hogs, seven cattle, and two beds and furniture, and nothing more. And all of these chattels, except the two slaves, have long ago been dead, or consumed in the use. The defendant admits, that, after the marriage, he re *50 ceived certain small sums of money, appearing by proof, to be about $300 : represented to be on account of his wife’s share of her father’s estate ; but alleges, that the whole was expended during the coverture. It further appears, that the defendant received from Matthiew Cave, chattels valued at $32, and money to the sum of $175, as his wife’s share of the estate of Nancy Cave, one of the testator’s daughters who died without issue; also the sum of $34 40, in full of the share of himself and wife in the estate of John Cave, deceased, who is stated, but not proved, to have been a debtor of the testator.”
Martha Bradly died 29th June, 1851, and the plaintiff, A. J-Nix, administered on her estate in January, 1852. This bill was filed on the 11th May, 1852.
The plaintiffs claim from the defendant an account of the estate which his deceased wife, Martha Bradley, derived under her father’s will, on the ground, that it was her separate estate, upon which the marital rights did not attach; and that Martha Bradley dying intestate, said estate was distributable among her next of kin under the statute of distributions.
I have already shewn, that the estate which Martha Bradley derived under her father’s will, was, in its inception, her separate estate. But there may be a fee in an equity, as well as in a legal estate; and Martha Bradley took an absolute interest in the equity. There was no limitation or remainder. The plaintiffs had no estate in the property, and they can only claim in the way of succession by or through her.
The question then occurs, can a feme sole, who is sui juris, alienate her separate estate? Can she encumber it? Can she subject it to the payment of debts ; devise or bequeathdt? Can she make any disposition of it, which a man, under similar circumstances would be authorized to make ? There cannot be a doubt, that on both principle and authority, all these questions must be answered in the affirmative.
One of the most valuable incidents, in the institution of property, is the right of alienation; and no citizen of the country, male or female, who is under no disability, can be restrained in *51 .the exercise of the right, without a violent assault upon the very nature of the institution. There is no form of conveyance which ingenuity can devise, by which a man, who is under no disability, can have property without the power to convey and' assign his right, whatever that may be. The same principle applies in its full force, and all the reasoning.on which it is founded, to a feme sole under the like circumstances (a). The married woman is secure in the enjoyment of her separate estate, without the power of alienation, and of subjecting it to payment of her debts, on the ground, that she is under the disability of coverture, and can make no contracts, or assignments that are binding upon her estate, further than is authorized by the instrument creating it.
If these views be not correct, a feme sole with a separate estate, though it be in fee, would be denied the enjoyment of her property, with the incidents belonging to it, and which make it valuable. She would not be able to devise, bequeath, sell or give it, though she lived in single blessedness to the end of her life. There is no reason in such a restraint upon the rights of property.
The authorities which I will now cite, abundantly shew, that I have not stated the principle too strongly. “ It is, at length, clearly established,” says Mr. Lewin, “that a feme sole may dispose absolutely of a gift to her separate use; and the principle is briefly this, that whenever a person possessing an interest however remote is sui juris, that person can not be restrained by any intention of the donor, from exercising the ordinary rights of proprietorship.” Lew. on Trusts, 151.
Sir Edward Sugden, in treating of a woman’s power over her separate estate, prior to márriage, says, “her power of alienation, while discovert, is denied by none.” 1 Sugden on Powers, 202.
Mr. Bell says, “ if property be given to the separate use of a *52 woman who is not married at the date of the gift, with a clause in restraint directed against any future marriage, she will have all the rights of a feme sole, and an absolute ownership while she continues sole. And upon her application, the property will be transferred to her absolute use.” Bell on the property of Husband and Wife, 508.
Mr. McQueen says, “ as the separate use cannot exist but in the married state, so neither can the restraint upon anticipation. There is no form of limitation whereby a single woman can be prevented from squandering her income, or dissipating her money. If, then, property become vested in her while discovert, although the instrument may express that the gift is to be to her separate use, ahd subject to restraint upon alienation, she may nevertheless dispose of it absolutely; because property cannot be given to a feme sole, any more than to a man, without being subject to the incidents which property implies; and one of these is the unlimited power of disposal.” I McQueen on Husband and Wife, 313.
In Tullett vs. Armstrong, 1 Beav. 1; S. C. 4 My. & Or. 390, Lord Langdale held, that the alienation of her separate estate by a feme sole was valid. “ The restraint,” he says, “ is annexed to the separate estate only during coverture. Whilst the woman is discovert, the separate estate, whether modified by restraint or not, is suspended, and has no operation, though it is capable of arising upon the happening of a marriage.” This decision was on appeal affirmed by Lord Cottenham, 4 My. & Or. 405.
Sir John Leach twice held, that a woman, while sole, could not assign her separate estate; and in both cases, his decisions were reversed by Lord Brougham, who held that the assignments were valid. 1 Sug. Pow. 202.(a)
It is clear, therefore, that all the dispositions which Martha Bradley made of her separate estate before her intermarriage with tire defendant are valid, and did not constitute any sepa *53 rate estate in her at the time she entered into the coverture. And this includes Chloe and Richard, and the other issue of Chloe. She sold Peter, as she had a right to do. With the purchase money of Peter, the Chancellor says, (he is satisfied from the evidence,) she bought Chloe and Richard. But she took the title in her own name, discharged of all trust, or restriction, thus renouncing the separate estate. These negroes were never a part of the separate estate, and the marital rights attached upon them.
But the Chancellor says, “ the defendant admits, that after the marriage, he received several small sums of money, appearing by proof to be about $300, represented to be on account of his wife’s share of her father’s estate; but alleges that the whole was expended during the coverture.”
Upon this state of facts, the question is raised, whether the separate use does not continue as to that portion of the estate which was not disposed of by the wife, while sole, and which was received by the husband after the marriage ? And if so^ is the husband who has received the same, liable to account ?
It is asked with much plausibility and force, if the woman, while sole, can sell or even give away her separate estate, why may not the husband take it as a purchaser for valuable consideration 1 “ Has the Court any authority to alter the nature of that property on her subsequent marriage, and limit the gift so as to exclude the rights of the husband ?” Coleridge Sol. in Tullett vs. Armstrong, 1 Bev. 11.
The principle asserted in the foregoing proposition is not without the support of authority. Massey vs. Parker, 2 My. & K. 174; Newton vs. Reid, 4 Sim. 141. It seems at no late day to have been a disputed question in the English Court of Chancery. (a) It would be proper here to remark that between the law of England and that of South Carolina, there is an important distinction as to the power of a married woman over *54 her separate estate. Whilst in the former country, the wife has all the rights incident to property with the absolute power of disposal, even in favor of her own husband, except so far as she is restricted by the instrument which creates the estate ; in this State, the wife having a separate estate, has, during coverture, no power of alienation over the property further than she is au-thorised by the instrument under which she derives it. Without bearing in mind this distinction, the English cases upon this interesting subject, will not be so well understood. Thus they hold, there, that a married woman having a separate estate without any restraint upon the power of disposal, may do with it as she pleases; may exercise all the rights of ownership. It is otherwise where there is a restraint upon alienation. In such instances, the wife, in her use of the estate, must conform to the conditions which the restraint imposes'upon her. It is the latter class of cases that will apply in questions arising in our Courts, where the restraint exists in all cases of separate estate where power is not given to the wife ; and such restraint is implied from the nature of the estate.
In Squire vs. Dean, 4 Bro. C. C. 326, it was held, that if the husband is permitted by the wife to receive her separate estate, and it is applied to the maintenance of the family, she will be presumed to have assented to such application of it. And in Beresford vs. the Archbishop of Armagh, 13 Sim. 643, it was held, that if the husband receives the wife’s separate estate, and the fact be known to the wife without the assertion of any claim or objection on her part, a gift to the husband will be presumed.
The defendant, Robert Bradley, says, by way of defence, that the portion of the separate estate of his wife received by him was expended during the coverture. It does not appear, that it was expended in support of the family; nor by the express or implied assent of the wife. And even by the English cases, the husband under such circumstances would be held to account on the de^th of the wife.
But conceding, that it was satisfactorily proved, that the pro. *55 perty was expended for the support of the wife, or was actually given by her to the husband, or to a stranger, the principle of the class of cases last referred to will not apply in this State-Those are cases in which the wife’s power over her separate estate was not restricted. They are not in point here, where the wife can in no case sell, or give, her separate estate, unless it be coupled with a power of disposal, or appointment to uses-When a feme sole has a separate estate, with restraint upon alienation in England, or without it in this State, (where the restraint is always implied,) though the restriction be suspended) and the power of alienation exists unfettered, while she is dis-covert, as soon as she 'marries, the restraint is called into activity, and operates to the exclusion of the marital rights. This doctrine was fully recognized in Tullett vs. Armstrong, 1 Beav. 1. And on appeal, it was affirmed by Lord Cottenham. S. C. 4 My. & Or. 377, 392. It would seem, however, that “ the moment she becomes again single, the separate use, and the restraint in anticipation, will both cease, though still capable of revival, and subject to extinction, upon subsequent marriages, and subsequent discovertures, toties quoties."(a)
In Clark vs. Jacques, 1 Beav. 36, an annuity was given by will to Sarah Grace Hitchcock who was a feme sole at the death of the testator, to her separate use, and with a restraint upon alienation. After the death of the testator, Sarah Grace Hitchcock intermarried with Thomas Jacques, who died leaving Sarah Grace surviving him. She afterwards intermarried with Bichard Hitchcock. The said Richard Hitchcock and Sarah Grace Hitchcock having sold the annuity to one Ireneus Mahew, united in a petition to the Court for a confirmation of the sale. No disposition of the annuity was made while she was disco-vert. Lord Langdale, master of the Rolls, refused the petition, holding that the separate use with restraint against alienation attached upon the estate during the second coverture. See Scarborough vs. Borman, 1 Beav. 34; Dixon vs. Dixon, 1 Beav. 40.
*56 The reason why a feme sole having a separate estate, even with a restraint upon alienation, may sell, or give it to a stranger, and yet the husband may not take it as a purchaser upon the valuable consideration of marriage, has been placed upon various grounds. The distinction is anomalous. By some.it has been attempted to be based upon the assent tacitly given by the husband when he marries a woman with a separate estate : Lord Cottenham in Tullett vs. Armstrong, 4 My. & Cr. 404. But, as reasoned by his Lordship, resting the claim of the0wife upon such assent of the husband, it is assumed, that without such assent, it would not exist. Neither could the assent oí the husband be implied without notice of the settlement, and thus would be raised an issue of fact as to the notice in almost every case. Based upon such grounds, the protection which this Court could give to the separate estates of married women would be very inadequate and uncertain.
Others have supposed the title of the husband as a purchaser to be defective, because the title, is not consummated until the solemnization of the marriage; after which, the wife is incompetent to contract, or to confer title, by reason of the coverture. This reason is also illogical and inconsistent: for by the same process of reasoning, it could be shewn, that the wife would be incompetent by her marriage to confer title upon her husband of her chattels in possession.
The doctrine must be allowed to be an anomaly — an exception to the usual incidents of property — a creature oí the Court of Equity, adopted for the preservation of the separate' estates of married women, without which, they would, in many instances, be endangered and destroyed by the marital power and influence. It is surely within the competency of a Court, where the idea of separate estates originated, and where rights under them are enforced, contrary to the rights of the husband as recognized in Courts of law, to modify the rules regulating such estates, and to amplify their defences, so that they may be effectually preserved for the purposes for which they were created. Besides this, the aim of the donor in creating a separate *57 estate is always directed against the marital rights. Without marriage, no such estate would be created; neither could it be. It can only exist in the marriage state ; for, otherwise, it has no meaning. The Court, therefore, simply carries out the intentions of the donor, and the purpose of this institution, when it considers a feme sole competent to dispose of her separate estate while she is sole; and if not so alienated, in disallowing the marital rights of the husband after the marriage.
TJhe sum for which the defendant will be responsible, under the foregoing principles, will be small; not exceeding f300, if so much. The Solicitor for the defendant, in this branch of the case, has quoted the law maxim, “ de minimis non curat lex? The maxim has never applied to money demands. Nor do I know that the sum in controversy would be regarded by the parties claiming it, as insignificant. Be this as it may, we are not at liberty to withhold a remedy for the enforcement of any claim, however small, which is presented in proper form, and to which the party claiming is entitled by the law of the land.
It is ordered, and decreed, that the circuit decree be modified.
It is further ordered, that the defendant is liable to account to the administrator of his deceased wife, Sarah. Bradley, for all sums of money and choses in action ; also, for all other property of the testator, other than that which was consumed in the use; and which have come into the hands of the said defendant during his coverture with the said Sarah Bradley; together with interest upon the value of the same from her death.
It is further ordered, and decreed, that the Commissioner take an account of the same, and report to the Circuit Court.
In all other respects, it is ordered and decreed, that the circuit decree be affirmed, and the appeal be dismissed.
Dunkin and Wardlaw, CC., concurred.
Johnston, Ch., absent at the hearing.

Decree modified.

 Woodmeston vs. Walker, 2 Russ. and M. 197; Brown vs. Pocock, 2 Russ. and M. 210; S. C. 5 Sim. 663; Jones vs.Salter, 2 Russ. and M. 208; Barton vs. Briscoe, Jac. 603.

 Woadmeston vs. Walker, 2 Russ. & M. 197; Brown vs. Pocock, 2 Russ. & M. 210.

 1 Mad. Ch. 473; Pawlet vs. Delaval, 2 Ves. Sen. 679 ; Clinton vs. Hooper, 5 Bro. C. R. 201; Lynn vs. Ashton, 1 Russ. & M. 188.

 McQ., H. & W. 314 j Jones vs. Salter, 2 Russ.& M. 208; Barton vs. Briscoe, Jac. 603.